## COPE et al. v. JOHNSON et al.

No. 15524—Opinion Filed Oct. 26. 1926.

Rehearing Denied Jan. 4, 1927.

1. **Banks and Banking—Right of Subrogation in Stockholders' Paying Overdue Debts to Repair Assets of State Bank.**

Where the stockholders of a state bank, under the advice and order of the Bank Commissioner, pay into the bank a debtor's overdue obligation, to repair the assets of the bank, and said payment serves this purpose to the same extent as if the payment had been made by the debtor, the said stockholders are entitled to be subrogated to the rights of the bank in said indebtedness and against the debtor for reimbursement.

2. **Appeal and Error—Action on Supersedeas Bond—Rights of Assignee of Judgment in Replevin.**

The right to bring suit on a supersedeas

bond on appeal from an order of the district court dissolving a restraining order, in a replevin action, which is conditioned to pay any judgment rendered against him on appeal or in further proceedings had in said cause, and all costs and damages that may be rendered against him, passes as an incident to the assignment of the judgment in said replevin action although no reference is made to the bond in the assignment, and suit may be maintained by the assignee of the judgment the same as by the assignor.

### 3. Same—Change of Theory of Case not Permissible on Appeal.

Where plaintiff brings his action as assignee, such as the assignor could have brought, and defendant recognizes assignee's right to bring the action by asking relief against the assignee, such as he could have asked against the assignor, and the cause is tried on that theory, defendant will not be heard to say on appeal that plaintiff had no right to bring the action. That is to say, a party will be held to the same theory in this court as he adopted in the trial court.

### 4. Same—Appellant Estopped to Question Jurisdiction of Appeal After Damages Accrued from Stay of Proceedings.

After a party has obtained an injunction and stayed his adversary's proceedings, and from an order of the court dissolving the injunction, has taken an appeal to the Supreme Court and given bond to further stay the proceedings, and thereby caused said adversary to suffer damages, it is too late for said appellant to set up as defense in an action on the supersedeas bond a want of jurisdiction to entertain the appeal.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Beaver County; Arthur G. Sutton, Judge.

Action by P. A. Johnson, Roy Sappington, J. L. Vance, A. J. Dickson, and F. R. Schauner, against Clifton C. Cope, George B. Zirkle, George Heglin, H. O. Hennicke and H. S Mathers, to enforce two supersedeas bonds. Judgment for plaintiffs, and defendants appeal. Affirmed.

G. W. Buckner, G. W. Sawyer, and John C. King, for plaintiffs in error.

Robert E. Dickson and M. F. Cosgrove, for defendants in error.

Opinion by THREADGILL, C. This action was brought by defendants in error as plaintiffs against plaintiffs in error as defendants to enforce the terms of two supersedeas bonds. For convenience the parties will be referred to as they appeared in the trial court.

Plaintiffs pleaded, in substance, that they were the owners of the indebtedness owed by Clifton C. Cope to the Bank of Commerce of Beaver county, in the sum of $2,233.67, evidenced by note and mortgage, by reason of having to pay into said bank as stockholders, under order of the State Bank Commissioner, this indebtedness, and a judgment of the bank against said Cope for possession of the property, described in the mortgage as security for said indebtedness, belonged to them by assignment of the bank. They further plead that on April 23, 1919, at the time the said bank obtained judgment for the possession of the property, the said property was worth the full amount of said indebtedness, and while the bank was making an effort to sell the said property under the terms of the said mortgage, the said Cope obtained a temporary restraining order to prevent the sale, which was on December 12, 1919, dissolved, and the said Cope took an appeal to this court and gave a bond in the sum of $4,000 for this purpose and to stay the judgment against him, and, after the appeal was lodged in this court, gave another bond for the same amount and for the same purpose, and on March 7, 1922, the appeal was dismissed. In the meantime, the property had depreciated until it sold for only $600, $430 of which was applied to expenses for keeping it, and $170 applied on the indebtedness; that the depreciation was the result of the delay caused by the injunction proceedings and the supersedeas bonds; that plaintiffs based their action upon the supersedeas bonds and asked for damages for the depreciation in the sum of $2,233.67 with 10 per cent. interest from April, 1919, less the $170 received by the sale of the stock; also $1,520, with interest from September 8, 1922, balance due for expenses.

The defendant Cope answered, admitting the mortgage and indebtedness, judgment for possession of the property, the injunction proceedings to prevent the sale, the appeal and bonds, and dismissal of the appeal. He says the property was worth $3,500 at the time the sale was held up by the appeal; that the appeal failed because not filed in time; that the bonds were void, because the appeal was dismissed; that plaintiffs could have proceeded to sell the stock, as the appeal was not filed within the 30 days, as the law provides and as plaintiffs well knew, or could have known; that the appeal did not prevent the sale; that the failure of plaintiffs to sell the property resulted in damages to the defendant Cope and in the sum of $3,500, for which he asks judgment against the plaintiffs. The answers of the

sureties were about the same as the defendant Cope, except the sureties asked for judgment over against the defendant Cope in case judgment was rendered against them. The cause was tried to the court upon an agreed statement of facts

In substance, they agreed that the note, at the time the replevin judgment was had, on April 23. 1919, was held by the said Bank of Commerce of Gate, and was for $2 233,67, and the mortgage covering the property in the controversy was made to secure the payment of the note. They agreed that the judgment for possession of the property was had; that the bank took possession of the property about August 3, 1919; that the bank proceeded to advertise the property for sale; that the sale was prevented by the defendant Cope getting a temporary injunction against it about October 15, 1919; that on December 20, 1919, the restraining order was dissolved; that an appeal was taken and the bonds given and the appeal failed because not filed in time; that the appeal was dismissed March 7, 1922; that the mandate was filed in the district court about June 14, 1922; that the live stock described in the mortgage were, on October 15, 1919, and for several months thereafter. worth $3,500; that the plaintiffs, stockholders of the said bank, on May 28, 1922, were required by the said Bank Commissioner to pay the said indebtedness of said Cope in the sum of $2,233.67; that at the same time the bank assigned judgment No. 2209 for possession of said property to plaintiffs; that they took possession of the stock and sold them for $680; that the defendant Heglin presented a reasonable claim to the bank for keeping the said stock in the sum of $1,950; that the sale of the stock for $680 was a fair and reasonable price for the property at the time they were sold.

The parties were thereupon permitted to amend their pleadings to accord with the agreed statement of facts. The court rendered judgment for plaintiffs against the defendants (except Rhodes, deceased) for $2,233.67, the amount sued for, with interest at 10 per cent. per annum from May 29, 1922, and for $1,664.40 for expenses in taking care of the stock with interest at 6 per cent. per annum from date; also judgment over against Cope in favor of the defendants. sureties on the bonds, and the defendants have appealed asking for a reversal of the judgment.

The defendants state several assignments of error and contend. in general. that the judgment is erroneous because the assign-

ment of the judgment in the replevin action, under which plaintiffs claimed their right to bring their action upon the supersedeas bonds, was not broad enough to convey all the rights of the bank incidental to, and growing out of, said replevin action, while the plaintiffs contend to the contrary. Upon a review of the pleadings, agreed statement of facts, and the briefs of the parties, we think there are two questions decisive of the appeal. The first is whether or not plaintiffs are entitled to an equitable subrogation to the rights of the bank in the Cope indebtedness, the note for $2,233.67, and the mortgage securing the same, by virtue of having paid said indebtedness to the bank, under the advice and direction of the State Bank Commissioner, to protect the bank against his authority to declare it insolvent. Second. whether or not the assignment of the judgment, which was for possession of the mortgaged property, carried with it all the rights of the bank, incidental to and resulting from said judgment, including damages caused by depreciation of the value of the property, in the delay of sale on account of the injunction proceedings and the supersedeas bonds.

1. In answering the first question, the facts and circumstances of the particular case must be considered and the law applied according to the rule of justice and good conscience. In the case of American Bonding Co. v. State Saving Bank, a Montana case, 133 Pac. 367, it is stated in the text:

"The doctrine of subrogation has its origin in the civil law. It has been adopted and invoked by courts of equity in order that justice may be done as nearly as possible. The application of the doctrine must therefore depend upon the circumstances of each particular case."

In the case of Murray v. O'Brien, a Washington case, 105 Pac. 840, we have the rule stated as follows:

"The right of subrogation applies in cases where a party who has an interest in property and who does not stand as a mere volunteer, pays a debt owing in whole or in part by another. to protect his own rights or to save his own property, and the remedy is not limited to sureties and quasi sureties, but is freely applied in equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion, ought to be paid by another."

The text of the opinion quotes from the Lidderdal's Executor v. Robinson, Adm'r, 2 Brock. 159 Fed. Cas. No. 8337, where Chief Justice Marshall says:

"When a purchaser has paid money for which others are responsible, the equitable claim which such payment gives him on these who are so responsible shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted to every equitable intent and purpose in the place of the creditor whose claim he has discharged."

In the case of Royce et al. v. Bank of Walter, 21 Okla. 484, 97 Pac. 640, our court states the rule as follows:

"In a case where the territorial Bank Commissioner required the officers of a bank to repair its assets by making a deposit of $2,000 on the erroneous assumption that certain notes were lost, and the said officers made a deposit to cover the amount thereof in the discovery and return to the bank of the said notes, the officers making the deposit aforesaid are entitled to be subrogated to the rights of the bank in the notes or the proceeds thereof, it is error to sustain a demurrer to an answer setting up such facts."

See, also, Alberti v. Moore et al., 20 Okla. 78, 93 Pac. 543.

But plaintiffs in error contend that defendants in error did not pay the debt or obligation of Cope, but the payment they made, under the advice and direction of the Bank Commissioner, was in the nature of an assessment to repair the capital stock. The facts agreed upon do not support this contention, but the facts agreed upon on this point are as follows:

"17. On or about May 28, 1922, plaintiffs were stockholders in the bank, and about that date a Bank Examiner of the state of Oklahoma required the bank to charge off the note above described, held by it against Cope.

"18. Said note was so charged off, and plaintiffs were required to pay to the bank the sum of $2,233.67, the amount of said note, in proportion to the amount of capital stock of plaintiffs as compelled to do by the Bank Examiner."

The next fact agreed upon is that the bank assigned its judgment against Cope to the defendants in error. We cannot come to any other conclusion from these facts but that the Bank Commissioner considered this Cope indebtedness "bad paper," being long past due, and its effect was to impair the credit of the bank, and for this reason he advised and ordered that it be charged off as an asset, and directed that the stockholders pay the amount of it into the bank to take its place. It does not appear that the payment was turned in on the capital stock, but was turned in in the same way as if

Cope had made the payment. It was Cope's indebtedness and it was his duty to pay it, but he failed to pay it and the stockholders were forced to pay it to protect the credit of the bank, as well as themselves as owners of the bank, and the bank, being satisfied, had no further interest in the indebtedness, and it would be unjust and against good conscience to say that the stockholders have no right of action against Cope to enforce payment of this indebtedness they had to pay for him. The bank could not enforce payment because it had no further interest in the indebtedness, and if these stockholders could not enforce payment, then Cope's liability would be discharged by what the stockholders did in paying the debt for him. Defendants cite us to the case of Sacramento Bank v. Pacific Bank, a California case, 56 Pac. 781, and contend that the rule laid down in that case should govern here, but we do not think so because the facts in the two cases are too far apart. The rule in that case is based upon the payment made by the stockholders as an assessment to make good the capital stock of an insolvent bank for the benefit of the creditors, while the rule applicable to the case under consideration is based upon the compulsory payment of a creditor's debt to prevent the bank becoming insolvent.

2. In considering the second question, whether or not the assignment to plaintiffs carried with it the bank's interest in the supersedeas bonds upon which this action is based, the defendants contend that the rule laid down in the case of Crist v. McDaniel, 15 Okla. 469, 83 Pac. 991, is controlling. This rule is as follows:

"Where a proceeding is brought in one county to enjoin the sale of property levied upon under a judgment rendered in another county upon a promissory note, and plaintiff in the injunction suit appeals from an order dissolving a temporary injunction and executes a supersedeas bond to the sheriff and judgment creditor jointly, and the appeal in the injunction case is affirmed, held, that an assignment of the judgment rendered in the action on the promissory note, which does not purport in terms to assign anything other than the judgment. will only convey such rights as are vested in the assignor by virtue of that particular judgment, and will not operate to pass to the assignee a right of action on the stay bond given in the injunction proceeding."

We do not think this rule applicable because the judgment was on a promissory note, obtained in one county, and was assigned to a voluntary purchaser, and the

court held that this assignment did not include the right to bring suit on an injunction bond, for damages, given in an injunction action in another county to prevent a sale under an attachment issued out of the county where the judgment was had on the note to enforce the judgment. The consideration for the judgment was voluntary. There were no equities involved. The injunction was a separate and distinct action from the suit on the note. It was an attack on an ancillary proceeding to the judgment. The bond was given as a supersedeas bond in an appeal from a judgment in the injunction case adverse to the plaintiff in said case, and he was defendant in the suit on the note. But the facts are different in the case at bar. The injunction proceedings were in the same county, in the same court, in the same case, and may be said to have flowed out of the same controversy and it prevented the bank, plaintiff's assignor, from appropriating the property taken by the judgment to the satisfaction of the defendant Cope's indebtedness, and giving him the difference between $2,233.67 with interest and $3,500, the value of the property at that time. The judgment for possession of the property carried with it the right to dispose of the property by sale as provided in the mortgage. The injunction prevented the enforcement of the judgment in this respect. When the bonds were executed in the appeal from the judgment or order of the court, denying the injunctive relief, they were in contemplation of the judgment for possession and the right to sell the property by virtue of the possession. Then there were equities involved as above pointed out. The unwise acts of defendant Cope, in preventing the sale of the property, caused the plaintiffs to have to pay the indebtedness to the bank. They were not voluntary purchasers, but the burden was laid upon them. The bonds were made to indemnify the bank for all damages and costs. The rule of equity placed the plaintiffs in the place of the bank for all purposes connected with the indebtedness. The security and the liability and the assignment of the judgment for possession of the property carried with them the liability of defendant arising out of the injunction proceedings and liability of the sureties on the supersedeas bonds on appeal. In the case of Meyer v. Jones et al., a California case, 163 Pac. 67, the rule is stated as follows:

"Sureties on an undertaking for the release of an attachment, a judgment thereunder having been assigned to plaintiff without assignment of any right or benefit of the undertaking, are liable to the plaintiff thereon, the undertaking being an incident of the judgment and by assignment passing with it."

In the case of Conway et al. v. Carnall et al., 101 Okla. 172, 224 Pac. 553, our court states as follows:

"The right to bring suit on a bond given to discharge a garnishment which is conditioned that the bondsmen will pay the money judgment rendered in the main action passes as an incident to the assignment of the judgment, although no reference is made to the bond in the assignment, and suit may be maintained in the name of the assignee of the judgment."

3. Plaintiffs contend that, from the status of the record, defendants are not in a position to urge that the assignment did not carry with it the right of action on the appeal bonds, since they joined the defendant Cope, claiming that they were damaged the full value of the property for failure of the bank to ignore the injunction, and they ask for damages against the plaintiffs. This was the theory of both parties in the trial court. Plaintiffs claimed damages against the defendants for preventing the sale of the property December 1, 1919, by the injunction proceedings, and the defendants claimed damages in favor of Cope for failure of plaintiffs' assignor, the bank, to ignore the injunction. The defendant George Heglin, in addition to his plea in common with the other defendants as above stated, pleads that he took care of the property in controversy, and the balance due him for such services is the sum of $1,520, with interest at 6 per cent. from October 8, 1922, and he prays judgment for this sum against the plaintiffs' under the terms of the assignment requiring them to save the bank harmless. The same theory held to by the parties in the trial court must be adhered to in this court.

4. The contention of defendants that the supersedeas bonds were void because the proceedings on appeal were not sufficient to give the Supreme Court jurisdiction of the cause, and the plaintiffs, in the trial court, should have ignored the appeal and sold the stock when the price was good and saved itself, as well as the defendant Cope, is not tenable. The rule on this point is laid down in 32 C. J. 453, sec. 783, as follows:

"After plaintiff has obtained an injunction and stayed his adversary's proceedings, and thereby caused him to suffer damages, it is too late for plaintiff to set up as defense in an action on the injunction bond a want of jurisdiction to grant the injunction."

The same rule is stated by our court in

McClintock et al. v. Parish, 72 Okla. 260, 180 Pac. 689, as follows:

"The general rule seems to be that a want of jurisdiction of the court or officer granting the injunction constitutes no valid defense to an action upon the bond, or to the assessment of damages after the dissolution of the injunction."

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 482, §12 (Anno). (2) 4 C. J. p. 1300, §3425 (Anno). (3) 3 C. J. p. 718, §618; p. 762, §667; 2 R. C. L. p. 79; 1 R. C. L. Supp. p. 387; 4 R. C. L. Supp. p. 79; 5 R. C. L. Supp. p. 68. (4) 4 C. J. p. 1299; §3423 (Anno); 32 C. J. p. 453, §783.